1                   UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3            HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

4

5    MANUELA HERZER, an individual,        )
                                           )
6                    Plaintiff,            ) CASE NO.
                                           ) CV 17-7545-PSG
7         VS.                              )
                                           )
8    SHARI REDSTONE, an individual;        )
     TYLER KORFF, an individual; and       )
9    DOES 1-10, inclusive,                 )
                                           )
10                   Defendants.           )
     _____)

11

12

13

14
                    REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                         MONDAY, JULY 9, 2018
16
                              2:45 P.M.
17
                       LOS ANGELES, CALIFORNIA
18

19

20

21

22   _____

23              MAREA WOOLRICH, CSR 12698, CCRR
                FEDERAL OFFICIAL COURT REPORTER
24             350 WEST FIRST STREET, SUITE 4311
                LOS ANGELES, CALIFORNIA 90012
25                  mareawoolrich@aol.com


                     UNITED STATES DISTRICT COURT

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4         WINSTON & STRAWN LLP
          BY:  DAN K. WEBB
5         35 W. Wacker Drive
          Chicago, IL 60601-9703
6
          WINSTON & STRAWN LLP
7         BY:  STEPHEN SMEREK
          333 South Grand Avenue, 38th Floor
8         Los Angeles, CA 90071-1543

9         BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
          DROOKS, LINCENBERG & RHOW, P.C.
10        BY:  EKWAN RHOW
          NITHIN KUMAR
11        HERNÁN D. VERA
          1875 Century Park East, 23rd Floor
12        Los Angeles, CA 90067

13        LAW OFFICE OF RONALD RICHARDS & ASSOCIATES, A.P.C.
          BY:  RONALD RICHARDS
14        P.O. Box 11480
          Beverly Hills, CA 90213
15
     **FOR THE DEFENDANT SHARI REDSTONE:**
16
          HUESTON HENNIGAN LLP
17        BY:  ANDREW WALSH
          ROBERT KLIEGER
18        523 West 6th Street, Suite 400
          Los Angeles, CA 90014
19

20   **FOR THE DEFENDANT TYLER KORFF:**

21        HOLLAND & KNIGHT LLP
          BY:  KRISTINA AZLIN
22        400 South Hope Street, 8th Floor
          Los Angeles, CA 90071
23
          HOLLAND & KNIGHT
24        BY:  DANIEL SMALL
          10 St. James Avenue, 11th Floor
25        Boston, MA 02116

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, JULY 9, 2018

 2                          2:45 P.M.

 3                           -oOo-

 4

 5         THE CLERK:  Calling Item 6, CV 17-7545,

 6  Manuela Herzer versus Shari Redstone, et al.

 7         Counsel, please state your appearances.

 8         MR. WEBB:  Your Honor, Dan Webb on behalf of

 9  plaintiff, Ms. Herzer.

10         MR. SMEREK:  Stephen Smerek of Winston & Strawn on

11  behalf of plaintiff.

12         MR. RICHARDS:  Ronald Richards for plaintiff,

13  Manuela Herzer, Law Offices of Ronald Richards & Associates

14  APC.

15         MR. RHOW:  Good afternoon, Your Honor.  Ekwan Rhow

16  on behalf of plaintiff as well.

17         MR. KUMAR:  Good afternoon, Your Honor.  Nithin

18  Kumar on behalf of plaintiff.

19         MR. VERA:  Good afternoon, Your Honor.  Hernán Vera

20  on behalf of plaintiff as well.

21         MR. WALSH:  Good afternoon, Your Honor.  Andrew

22  Walsh of Hueston Hennigan on behalf of Defendant Shari

23  Redstone.

24         MR. KLIEGER:  Good afternoon, Your Honor.

25  Robert Klieger of Hueston Hennigan also on behalf of Defendant
```

```
 1   Shari Redstone.
 2              MS. AZLIN:  Good morning, Your Honor.  Kristina
 3   Azlin of Holland & Knight on behalf of Defendant Tyler Korff.
 4   I'm here today with my colleague who is appearing pro hac vice,
 5   Mr. Dan Small.
 6              MR. SMALL:  Good afternoon, Your Honor.  Dan Small
 7   on behalf of Tyler Korff.
 8              THE COURT:  Let me hear from plaintiff's counsel
 9   first.  I have a few questions.
10              The first thing I want to address as it relates to
11   the RICO claim, I'd like to discuss Article III standing as it
12   relates to the RICO claim and whether in this -- given the
13   facts of this case, whether the removal from the trust and the
14   applicable attorneys' fees convey Article III standing as it
15   relates to RICO injury.
16              You may.
17              MR. WEBB:  Yes.  Thank you very much, Your Honor.
18              As far as whether the removal from the trust is a
19   cognizable injury that brings harm to a specific business or
20   property interest, under RICO, as Your Honor knows, that's
21   determined by principles of state law.
22              And while the defendants have argued that a bequest
23   in a trust that only provides an expectancy interest and is not
24   a present interest in either business or property but it's --
25   and it's only a future interest.
```

1          However, Your Honor, the Ninth Circuit, I think,

2   clearly held in the *Diaz* case that interfering with a future

3   benefit can constitute an injury sufficient to confer RICO

4   standing.

5          THE COURT:  But wasn't *Diaz* distinguishable?  *Diaz*

6   involved two things.  One, it involved a current contractual

7   relationship which does not exist in this case.

8          MR. WEBB:  Well, but in *Diaz* what the Court held is

9   that the future -- the future interest, which was basically

10  future job opportunities in the future, was cognizable under

11  RICO --

12         THE COURT:  Was it premised though on an existing

13  contractual relationship though, business and contractual

14  relationship separate and apart from the -- that led to the

15  prospective -- the business opportunity was the existing

16  contractual relationship that does not seem to exist here.

17         MR. WEBB:  Well, but, Your Honor, I do believe that

18  when -- Diaz held that a future employment opportunity which

19  would be --

20         THE COURT:  Based on a contract.

21         MR. WEBB:  Yes, it was based on a contract,

22  Your Honor.  Which I agree that we do not have a contract here.

23  But I don't think that makes any difference.  The issue was

24  whether or not a future interest can be a property interest

25  under RICO.

1          Under -- and under principles of state law, if you
2    look at *Diaz* in its holding, that in fact the -- in fact, the
3    Court pointed out that future employment opportunities could
4    very well change in the future.  And so you can't even
5    completely define what they are today.  But it is a future
6    interest which is cognizable under RICO as a property interest.
7          Our future interest -- I don't see any difference
8    between the property interest that Manuela Herzer has in a
9    future beneficiary inheritance -- is any different and has a
10   future interest under RICO than it is under the -- in *Diaz*.
11         In fact, I believe the whole heart of the *Diaz*
12   ruling was the issue about whether or not -- in fact, that
13   issue of whether or not a future interest can be protected
14   under RICO is why I think *Diaz* is so strong.
15         And the only cases plaintiff cites, they cite cases
16   that suggest that, if we were pleading a reduction in value of
17   the trust property, that those cases would hold that we would
18   not have a protected interest.
19         But what they don't distinguish is that our claim is
20   that there is intentional interference with a future beneficial
21   interest and that that future interest is the same under *Diaz*
22   and would be recognized under the law of California.
23         In fact, as Your Honor knows that the -- there's
24   actually a cause of action for intentional interference with
25   inheritance under California law.  And so that tort is well

1    recognized under California law in the *Beckwith vs. Dahl* case.

2            And so because in their opening briefs -- well,

3    defendants, they don't even argue that we have set forth facts

4    that clearly establish the five elements, the five elements

5    that would need to be pled to plead intentional interference

6    with an expected inheritance.

7            We plead those facts as set forth in various

8    paragraphs of this Complaint, and they don't deny that we have

9    done that.  What they argue is basically that Ms. Herzer cannot

10   rely upon those pled facts for RICO standing because her claim

11   for intentional interference with expected inheritance --

12   because the state court action, that claim was dismissed in.

13           But we point out in our brief, Your Honor, that

14   action was dismissed without prejudice by the state court and

15   actually at that point in time made it very, very clear that

16   his decision was not being based on the merits.  And then he

17   recognized the plausibility of Ms. Herzer's claim under that

18   tort.

19           And so the fact that that tort exists under

20   California law is the same thing as you have under *Diaz* where

21   the tort of interference with a prospective business

22   relationship was a recognized tort under the law of California.

23           Under the law of California, the tort of intentional

24   interference with an expected inheritance is also very well

25   recognized under California law.  And, therefore, there's -- at

1    least I believe under *Diaz* as well as the fact that that tort

2    exists means that clearly she has satisfied the RICO pleading

3    requirement.

4           Now, plaintiff does argue -- well, he says because,

5    in fact, Judge Hess did not -- that he dismissed it without

6    prejudice, but because Mr. Sumner Redstone is still alive, then

7    that cause of action can't be pled as a matter of law under

8    California law.  That's what they contend.

9           Now, I might point out that in the *Diaz* case, the

10   Court held that whether or not *Diaz* could actually plead the

11   elements, the elements of the cause of action of interference

12   with the prospective business relationship, did not take away

13   from the fact that he had pled a future interest which is

14   protectable under RICO because of that tort.

15          THE COURT:  Okay.

16          MR. WEBB:  Here we actually did plead.  We have pled

17   the facts that support that cause of action.

18          THE COURT:  Let's move on to -- okay.  Separate and

19   apart from removal from the trust, does the attorneys' fees

20   aspect of the case convey Article III standing by themselves?

21          MR. WEBB:  Yes, Your Honor.  Let me address that

22   issue.  The -- so the answer is yes.  And I'm going to quickly

23   talk through the cases we set forth in our brief.

24          There are a number of cases that recognize that

25   attorney fees are a cognizable injury under RICO.  And the --

1   now, the defendant argued that the Ninth Circuit has ruled on

2   the attorney fee issue in a case called Thomas vs. Baca.

3               THE COURT:  Right.

4               MR. WEBB:  But I'd like to talk about that case,

5   Your Honor.

6               THE COURT:  Why hasn't the circuit -- if the Court

7   has not recognized the -- the quote is, "The Court has not

8   recognized the incurment of legal fees as an injury cognizable

9   under RICO, and we decline to do so here."  That sounds pretty

10  clear to me.

11              MR. WEBB:  Yeah, first of all, the answer is, yes,

12  that's exactly what the Court said.  But what the Court did not

13  say in that opinion is that there would never be any other

14  circumstances.  In that case, we don't even know exactly what

15  happened in that case.

16              THE COURT:  It's a memo.

17              MR. WEBB:  Pardon me?

18              THE COURT:  It's a memo.  Never mind.  Go ahead.

19              MR. RICHARDS:  It's unpublished.

20              THE COURT:  That's okay.

21              MR. WEBB:  Your Honor, so the -- I believe

22  that the -- the fact is that case, as Your Honor knows, was an

23  unpublished --

24              THE COURT:  That's what I just said.

25              MR. WEBB:  I couldn't hear Your Honor.  I apologize

1   to Your Honor.

2          THE COURT:  But I heard it from the table.  So I

3   knew somebody knew it was an unpublished opinion.

4          MR. RICHARDS:  He doesn't know memo versus --

5          THE COURT:  Okay.

6          MR. WEBB:  It's not precedent.  And I would point

7   out, Your Honor, that we point out some cases in our brief,

8   particularly the *Burger* case which is a 2004 case from the

9   Northern District of California.

10          In that case the plaintiff had paid attorneys' fees

11   as result of a HUD investigation, and the Court found that

12   legal expenses are concrete financial losses and are thus

13   recoverable as a property interest under RICO.

14          And the defendants did not address that case at all

15   in their brief.

16          And I would call your attention to the *Bankers Trust*

17   case.

18          THE COURT:  That's what I was hoping you'd talk

19   about because in the *Bankers Trust* we had bribery.  Well, we

20   had bribery, and we also had -- the case was actually initiated

21   by the defendant.  Here the case was not -- it was initiated by

22   some third party, not even the defendant.  And there was an

23   ultimate positive outcome for the plaintiff in that case.  It

24   seems *Bankers* is quite different and distinguishable from this

25   case.

1          MR. WEBB:  Well, Your Honor, I respectfully suggest

2    that under *Bankers*, what the -- basically the Second Circuit

3    allowed recovery of legal fees and expenses in connection with

4    fighting frivolous litigation.

5          We have pled in paragraph 195 of our Complaint,

6    Your Honor, which I've called to Your Honor's attention,

7    Ms. Herzer pleads, "The attorney fees that she has incurred in

8    fighting frivolous state court legal actions, fraudulently

9    being prosecuted in Sumner Redstone's name."  That is the

10   actual pleading she has pled as far as the attorney fees she's

11   incurred.  That is exactly what was the holding --

12         THE COURT:  Weren't the other cases that you are

13   referring to causing injury initiated by a third party, not the

14   defendants?  The -- maybe I'm wrong in the way I read the

15   Complaint is that the persons or entities or whoever who

16   initiated the elder abuse litigation was initiated by a person

17   not a defendant in this case; is that incorrect?

18         MR. WEBB:  No, I think that is correct, Your Honor.

19         THE COURT:  So doesn't that fact by itself make

20   *Bankers* different?

21         MR. WEBB:  Well, I don't think it makes it -- the

22   *Bankers Trust* case I thought just stood for the proposition

23   that if you make an allegation that you have legal fees

24   incurred in connection with defending frivolous lawsuits, that

25   if you plead that, then you've satisfied the standards of

1    *Bankers Trust*, and we have pled that in paragraph 195.

2            So at least under pleading requirements that we

3    accept well pled facts as being true, that we have pled the

4    exact same legal fee issue that *Bankers Trust* relied upon.  And

5    I believe because of that, we have satisfied the requirement

6    that also legal fees are a cognizable injury under the RICO

7    statute.

8            And so I also would point out that in connection

9    with attorney fees, there's no dispute that Ms. Herzer has

10   already incurred attorney fees prior to the institution of the

11   federal action here.

12           THE COURT:  Does it make a difference that in

13   *Bankers*, that that case, when the new case was filed -- when

14   the RICO case was filed, that the *Bankers* -- that in *Bankers*

15   the underlying case that generated the attorneys' fees had been

16   concluded in the plaintiff's favor?

17           MR. WEBB:  I don't know why that would -- I just

18   don't think that changes the fundamental holding of *Bankers*

19   that, if your plea is that you've encountered attorney fees for

20   frivolous litigation and you plead that, then that under the

21   authority of the *Bankers* case is clearly pleading a cognizable

22   legal fee injury that is recognized under RICO and recognized

23   under *Bankers Trust*, Your Honor.  And I don't believe that

24   would make any difference to the fundamental holding of that

25   case.

1           THE COURT:  Okay.  Let me just move on to the second

2    cause of action, the ECPA cause of action, and whether there is

3    liability in existence anymore for secondary liability.

4           MR. WEBB:  Your Honor, we kind of split the

5    arguments up here between different issues, and Mr. Rhow is

6    going to -- if it's okay with Your Honor --

7           THE COURT:  Sure.  And then I was going to move on

8    to the statute of limitations as it relates to civil

9    conspiracy.  So --

10          MR. WEBB:  He's got that also.

11          THE COURT:  All right.  Thank you.

12          MR. WEBB:  Thank you.

13          MR. RHOW:  Your Honor, if I could just briefly

14   though go to two issues you did raise with Mr. Web, do you have

15   a problem if I did that right now?

16          THE COURT:  As long as you do it quickly.

17          MR. RHOW:  I will do it quickly.

18          I do think, if you look at the *Diaz* case, the *Diaz*

19   case itself talks about distinctions between the current

20   contract, the current employment, and future employment and

21   says for purposes of RICO, there's no distinction.  I think

22   that's on page 900.

23          So while, yes, we don't have a current contract

24   here, even *Diaz* indicates that distinction is not meaningful

25   for purposes of standing.

1          The *Bankers Trust* case, I know you are focused on

2   the fact that it was a third party who filed the lawsuit.

3   *Burger* also was a third party who filed a lawsuit.  In that

4   case it was HUD who filed the lawsuit.  And despite the fact

5   that HUD filed the lawsuit, damages still accrued, and there

6   was standing.

7          I also want to note that the specific conspiracy we

8   are alleging here is that, yes, while the third party filed the

9   lawsuit with Sumner Redstone, the whole conspiracy is that

10  Shari Redstone is effectively controlling him and he's a

11  puppet.  That's the nature of the very conspiracy.

12         So she, in essence, stands in his shoes for purposes

13  of filing the elder abuse lawsuit.  That confers standing, at

14  least from our interpretation, on *Bankers* and *Burger*.

15         Moving on to the ECPA claim, and I know Your Honor

16  is focused on the procurement language that --

17         THE COURT:  Right.  It seems the statute is pretty

18  clear that secondary liability was intentionally deleted.

19         MR. RHOW:  I'm loathe to do this, but here I think

20  you do have to go into the legislative history --

21         THE COURT:  I'm not doing that.  If you've read

22  anything that I've discussed in oral argument, forget about it.

23  It's not going to happen.  The statute is clear.  I mean, you

24  couldn't write a statute any clearer, and I'm not going to go

25  to legislative history --

```
 1            MR. RHOW:  Let me talk about the Ninth Circuit case
 2   that seems to indicate otherwise.
 3            There is that Ninth Circuit case, and we agree it's
 4   in dicta, DirecTV vs. Freeman.  It's 457 F.3d, a
 5   Ninth Circuit case where they say in dicta -- the Court notes
 6   that under Section 2511 of these ECPA, secondary liability
 7   could extend because the statute uses the phrase "any person."
 8            That suggests that there is primary liability and
 9   secondary liability for those who procure that violation.  The
10   New York case which we did cite did go into legislative history
11   and explained that the purpose of that refinement of the
12   statute -- the purpose of that clarification was to make it
13   more streamlined.  It was not to eradicate secondary liability
14   for those who procure which would make no sense from the very
15   fact that that statute was enacted in the first place.
16            And so if you look at the Lonegan vs. Hasty case,
17   that's the New York case -- and here I am quoting -- it says,
18   "Although the senate report explains most of the statutory
19   changes rendered by the 1986 Amendment in meticulous detail, it
20   is silent concerning the portion of suggesting 2520 at issue
21   here, suggesting that the changes to that portion were cosmetic
22   rather than substantive."
23            THE COURT:  What do I make from the pin cite at 1008
24   and 1009 from Freeman, quote, "There can be no question upon
25   whom Congress intended to impose liability.  It is spelled out
```

1    in plain and unambiguous language.  When a statute is precise

2    about who can be liable, the court should not implicitly read

3    secondary liability into the statute."

4           So how do you -- what's your argument?  How do I

5    reconcile that quote from direct?

6           MR. RHOW:  Well, *Freeman* also says in the portion I

7    cited that they focused on -- they are focusing on another

8    statute.  They are using the ECPA as analogy.  And they said

9    the ECPA's reference to the phrase "any person," that in and of

10   itself provided the basis for secondary liability of the -- on

11   the violator.

12          And when you couple that with the *Lonegan* analysis

13   of the legislative history, that tells you that that change was

14   not meant to cut out those who procure those violations.  It

15   was meant to streamline the statute.  You pair it with *Freeman*,

16   secondary liability still exists or should exist.

17          THE COURT:  Okay.  Could we talk a little bit -- and

18   then let me hear from the defendants -- the civil conspiracy

19   and the statute of limitations, and you've argued the late

20   discovery.

21          But my question is if the -- let me find the right

22   date here.  Give me one second here.

23          The defendants argue that the claim accrued no later

24   than May 2016 citing to another case where the plaintiff

25   alleges the same false information that's alleged to be the

```
 1   basis of this defamation claim.  And it seems to me that, if
 2   the exact same information exists in the filing on May 2016,
 3   that is the latest that discovery --
 4              MR. RHOW:  Understood.
 5              THE COURT:  -- could apply.
 6              MR. RHOW:  Is it 2016 or 2017?
 7              THE COURT:  My notes say 2016.  I could be -- is it
 8   2017?  Am I wrong?
 9              MR. RHOW:  No, you are correct.  I wanted to make
10   sure the month was right.
11              Now, the distinction is between what we are suing
12   on.  So the defamation that is referenced in the May 2016
13   Complaint is defamation done by folks in the household, the
14   nurses, to Sumner.  So the speaker are those nurses.  The
15   recipient is Sumner.
16              The defamation we are suing on here involves these
17   defendants.  And we've never alleged this in any prior
18   complaint.  And that is that Shari Redstone and Tyler Korff in
19   very specific and pointed e-mails that are sent to
20   Frederic Salerno, who is the director at Viacom,
21   David Andelman, who was Sumner's long-time attorney, and others
22   then defamed Manuela Herzer, and that's the conspiracy to
23   defame.
24              So while the statute may run on certain statements,
25   they don't run on these.  And especially given the whole
```

```
 1    premise behind this Complaint, this Complaint is a much
 2    different Complaint than the prior ones.  It expands the
 3    conspiracy dramatically.
 4            Because of the August 2017 production of documents
 5    that we got -- and mind you, we had never seen these documents
 6    before.  They've never been produced in any of the prior cases.
 7    They haven't been referenced in those prior cases.  In fact,
 8    some of those documents directly contradict Shari Redstone's
 9    sworn testimony in one of those earlier cases.
10            So we get that production in August 2017, and that
11    is the first time that we have a chance to see some of these
12    allegations, some of these defamatory statements.  We have
13    never seen those before.  And for that reason we then allege
14    the conspiracy to defame.  These defamatory statements are new
15    statements and involve different parties, different recipients,
16    different defendants.  And on that conspiracy, the statute has
17    not run.
18            THE COURT:  Okay.  Let me hear from defendants on
19    these points.
20            Work through the standing addressing what's been
21    said and then the statute and then defamation.
22            MR. KLIEGER:  Good afternoon, Your Honor.  Robert
23    Klieger on behalf of Shari Redstone.
24            I'm going to address the issues with respect to RICO
25    injury, and then I'm going to turn it over to my co-counsel for
```

1    the other issues.

2         With respect to RICO injury -- so dealing first with

3    the expectancy interest in a revocable trust, the law is pretty

4    clear that under California law, there is no property interest

5    in a gift or a bequest under a revocable trust unless and until

6    it becomes irrevocable upon the passing of the settlor.

7         So basic principles, we start no property interest.

8    Now, I understand that Ms. Herzer argues that if you apply the

9    reasoning of *Diaz* which recognized essentially a property

10   interest in a cause of action where the damages are arising

11   from the tort of interference with prospective economic

12   advantage, they want to grasp that here and say, well, here

13   it's the tort of interference with expected inheritance.  So

14   the same reasoning should apply.

15        There is -- it has been adjudicated in the

16   California state court that Ms. Herzer does not have a claim

17   for tortious interference with expected inheritance, and I just

18   want to take a moment to talk about the *Beckwith* case that

19   recognized that tort because it sheds a lot of light on why

20   that was the holding of the LA Superior Court.

21        In *Beckwith v. Dahl*, the individual who was claiming

22   that there had been an interference with an expected

23   inheritance was not actually in the will of the individual that

24   passed away.  And the argument was that they had interfered

25   with the testator putting that individual in the will and

1    therefore there was no probate remedy.  The only place that the

2    individual who claimed to have been harmed could seek a remedy

3    was through a tort action outside of the probate process.

4         *Beckwith v. Dahl* recognized a very narrow tort of

5    tortious interference with expected inheritance that applies

6    only where there's no probate remedy available.  What

7    Judge Hess said in this case when he dismissed -- in the state

8    court proceeding when he dismissed Ms. Herzer's claim for

9    interference with expected inheritance, he said you were in the

10   trust.  You are claiming you were improperly removed from the

11   trust.  That's a probate remedy.  You can go to probate court

12   for that.  And, indeed, she did go to probate court and say she

13   was improperly removed from the trust.

14        The reason it was without prejudice is what

15   Judge Hess said -- and this is in the transcript.  What

16   Judge Hess said was, look, I want to make sure that I don't

17   preclude you from bringing that claim in probate court.  So I'm

18   going to dismiss this without prejudice to give you -- I forget

19   how much time it was -- but basically ten days to file your

20   probate court action.  If you choose not to do that, to

21   dismiss, it will ripen into a dismissal with prejudice.  And

22   then she filed her probate action availing herself of the

23   probate remedy.

24        So this is a situation where, although the

25   California courts have recognized a class of cases in which

1  that tort does exist, it does not exist with respect to

2  Ms. Herzer, and it's already been ruled by the California state

3  court that it does not exist.

4          So even if there were a parallel between prospective

5  economic advantage and the fact that there was an existing

6  contract there and interference with expected inheritance and

7  the lack of a contract here, even if you could otherwise draw

8  parallels, there is no tort claim here available to Ms. Herzer.

9  So claiming a property interest either in a bequest under the

10  trust or in the damages under a tort theory, neither of those

11  are available to Ms. Herzer.  So there is no basis for RICO

12  injury under the trust argument.

13          So turning then to the legal fees argument.  So

14  there are some district courts, including the *Burger* case that

15  was cited in the Ninth Circuit, that prior to *Thomas v. Baca*

16  did recognize the possibility anyway that legal fees incurred

17  in another action could be RICO -- cognizable RICO injury.

18          Yes, *Thomas v. Baca* is an unpublished disposition.

19  Every District Court, at least that we've found, since that

20  decision has recognized that the Ninth Circuit has declined to

21  recognized it and therefore have similarly declined to

22  recognize legal fees.

23          But even if we were to assume we were in a circuit

24  that does recognize it or assume that maybe the Ninth Circuit

25  at some point will decide that it does want to recognize it,

1    all of those cases deal with situations where the attorneys'

2    fees have been incurred in connection with an action that is

3    concluded and in this case where the allegation was a sham

4    proceeding is the allegation, where the action -- generally the

5    person that brought the action has lost and there's been

6    adjudication that it was a frivolous action or a sham action.

7            Here we have two actions that are alleged to be sham

8    proceedings that the allegation is the attorneys' fees in those

9    proceedings were recoverable.  One Mr. Redstone won.  He won

10   summary judgment in the New York Carlyle action.  It was

11   affirmed several weeks ago by the New York appellate division.

12           The second one is the elder abuse case pending

13   before Judge Hess.  Ms. Herzer brought a summary judgment

14   motion that was heard several weeks ago saying that there's no

15   evidence of elder abuse, a frivolous action, the Court needs to

16   throw it out.  Denied.  The Court found that there was evidence

17   from which a jury could find, in fact, that there was

18   elder abuse and that the case could therefore go forward.

19           So we don't have a situation where we have the one

20   action that I guess arguably they could say that Mr. Redstone

21   could lose -- has not been finally adjudicated.

22           They are seeking the attorneys' fees recovery in

23   those cases.  So essentially the same fees they are claiming

24   are RICO injury they are also seeking to recover in that

25   action.  So there's no fact of RICO injury yet.  Even if --

1    even if legal fees otherwise could be, there's no fact of RICO

2    injury yet because there's been no adjudication of a sham

3    proceeding.

4          And it's impossible to determine an amount because

5    they are seeking to recover those same damages in the separate

6    action itself.

7          The last point I make, Your Honor, before I turn it

8    over to my colleague, is it is correct that in *Burger*, which is

9    the one case they cite that it was HUD, that it was a third

10   party that brought it.  But when you are dealing with a

11   separate proceeding being a third party proceeding, the need to

12   demonstrate a nexus between the injury and the RICO, the

13   alleged RICO enterprise, is a lot more important.

14         Because if it's not the person that's the actual

15   defendant that's alleged to have brought a frivolous action,

16   you really have to show how that action arises from -- is

17   related to the alleged RICO violation.

18         And here there's been no plausible explanation given

19   for how Mr. Redstone's filing of his action with respect to the

20   Carlyle which he won or his elder abuse action somehow arises

21   from the allegations of eavesdropping on private conversations

22   or of mail and wire fraud that are the basis for the alleged

23   RICO violations.

24         So even if the Ninth Circuit recognized legal fees,

25   even if these were concluded proceedings, there's still not the

1    nexus there that would be required for it to satisfy the

2    standing requirements.

3              THE COURT:  All right.

4              MR. SMALL:  Good afternoon, Your Honor.  Dan Small,

5    Holland & Knight, for Defendant Tyler Korff.

6              I just want to speak very briefly on the issues you

7    raised relating to the wiretap and the defamation.

8              As to the wiretap, plaintiffs have repeatedly

9    misrepresented the *Freeman* case.  The *Freeman* case is crystal

10   clear.  And the Ninth Circuit said, "We decline to read into

11   the text of these code sections claims for secondary liability.

12   Rather, we interpret the code to mean what it plainly says."

13   There is no secondary liability.

14             More than that, we don't even get to secondary

15   liability because there is no intercept.  The wiretap statute

16   requires very specific things to prove an intercept, none of

17   which are there.  Page 23 of our motion to dismiss lists the

18   elements that are required.  They are not there.  I'm not going

19   to go into it at length here, but they don't have an intercept,

20   and there is no secondary liability.

21             In terms of the defamation, the opening statement

22   which we quote in our brief that they gave in May of 2016 said,

23   "This ring of spies used the information they gathered and told

24   Sumner a bunch of lies, and two days later Manuela was gone."

25   That's this case.  That is this case.  That is their defamation

1   case.

2          And the Supreme Court -- one of my favorite little

3   quotes from the Supreme Court has said that, "Under the

4   discovery rule, the statute of limitations begins to run when

5   the plaintiff suspects or should suspect that her injury was

6   caused by wrongdoing.  So long as a suspicion exists, it is

7   clear that the plaintiff must go find the facts.  She cannot

8   wait for the facts to find her."

9          That's exactly what they are trying to do here,

10  Your Honor.  They are trying to say, well, sure, we knew when

11  we alleged three years ago, four years ago, whatever it was,

12  that there are all these lies.  But, gee, we just found some

13  new documents that --

14          THE COURT:  But when you start fashioning the

15  argument that way, doesn't that start to sound like a summary

16  judgment?  When you start the analysis into "so long a

17  suspicion exists, you have to pursue it," and that starts

18  smelling like a summary judgment argument.

19          MR. SMALL:  It would in an ordinary case.  This is

20  not an ordinary case for the simple reason that we've spent

21  three years of them forum shopping.  And so we have a record

22  that the Court can, in fact, consider in a motion to dismiss.

23  So you are absolutely right.  In an ordinary motion to dismiss,

24  we wouldn't be up here talking about --

25          THE COURT:  We would have to make inquiry as to what

```
 1   was done and why there wasn't due diligence.
 2              MR. SMALL:  Sure.  Absolutely.  No question about
 3   it.
 4              But that's not the situation we have here.  The
 5   situation we have here is three years of forum shopping.  And
 6   now we finally come -- they are losing their shopping sprees in
 7   other courts.  And so they've finally come to federal court and
 8   are trying to use -- or I should say abuse the RICO statute to
 9   shop here.
10              So you are absolutely right.  There is far more
11   facts and documents in this record than certainly in any motion
12   to dismiss record I've ever been involved in.  But that's just
13   the nature of the beast here.
14              THE COURT:  Okay.  The matter will stand submitted.
15              MR. SMALL:  Thank you.  Any other questions for --
16              THE COURT:  No, I'm good.  Thank you.
17              The matter stands submitted.
18              THE CLERK:  Court is in recess.
19              (At 3:19 p.m. the proceedings adjourned.)
20
21
22
23
24
25
```

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME COURT

 6   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

 7   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

 8   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

 9   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

10   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

11   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

12   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

13

14

15                  DATED THIS  15TH  DAY OF AUGUST, 2018.

16

17

18            /S/ MAREA WOOLRICH
                 _____
19            MAREA WOOLRICH, CSR NO. 12698, CCRR
              FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**